IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STACY OWENS,

                Plaintiff,

v.                                       Case No.  3:21-cv-01365

AMERICAN WATER RESOURCES, LLC,
a foreign corporation d/b/a AMERICAN
WATER RESOURCES, INC.,

                Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Each party in this employment discrimination case has moved for summary judgment. The Court considers the following facts when considering the motions.[1]

Stacy Owens began working for American Water in 1986 as an hourly employee. (Doc. 19, p. 2; Doc. 58, p. 1; Doc. 65-1, p. 18). Starting around 2001, Owens was a supervisor for American Water. (Doc. 65-1, p. 28). After earning years of corporate management experience in providing and managing water services (Doc. 64, p. 3), Owens retired from American Water in 2015. (Doc. 69-2, pp. 10-11).

American Water owned American Water Resources, LLC ("AWR"). (Doc. 69-1, p. 3). AWR provides and services water and sewer line protection warranties and is focused on providing home warranty programs to customers. (Doc. 65-1, p. 42-43; Doc. 64, pp. 3, 7).

---

[1] The Court notes that Owens did not respond to or dispute AWR's presentation of the undisputed facts in her response to AWR's Memorandum in Support of the Motion for Summary Judgment (Doc. 64). Thus, where AWR's presentation of the facts is supported by the record, the Court has deemed these facts undisputed. Further, where Owens presents facts in her argument, but does not provide a citation to the record for them, these facts will not be considered as applicable to the Court's analysis.

AWR recruited Owens in 2016 to serve as Director of Call Center Operations in Alton, Illinois. (Doc. 4).

In 2018, AWR acquired Pivotal Home Solutions, LLC ("PHS"). (Doc. 65-1, pp. 26-27). PHS based its call center, legal, marketing, and IT within its Naperville location. (Doc. 65-2, p. 10). After acquiring PHS, AWR initiated the merger of PHS and AWR with a discovery phase, during which time Owens served on a committee assessing what PHS did and how they did it. (Doc. 64, p. 3; Doc. 65-1, pp. 118-123). Owens disagreed with how AWR handled the discovery phase and challenged certain aspects during committee meetings. (Doc. 65-1, pp. 118-123).

In July 2019, Kathleen O'Hara ("O'Hara") was hired as the Vice President of Operations at AWR. (Doc. 65-2, p. 15). O'Hara's objective was to bring "[AWR] and [PHS] into one, the operational piece into one organization." (*Id*. at p. 23). Owens and the departments she supervised started reporting to O'Hara. (Doc. 65-1, pp. 140 - 42). While evaluating how to consolidate, O'Hara met with both Owens and her subordinates. (Doc. 65-2, p. 45). To streamline communication, O'Hara also started communicating directly with Owens' subordinates, assigning tasks and new organizational designs, based upon the assumption that they would keep Owens informed. (*Id.* at 50-51). O'Hara utilized this direct communication approach with the subordinates of Tom Benavidez, a Call Center Director in Naperville, as well. (*Id.* at 58-59). O'Hara also communicated with the Alton Workforce Manager, John Rauber, directly, assigning him tasks in addition to the ones assigned by Owens. (Doc. 65-6, p. 98). This continued to be O'Hara's practice after Benavidez became Rauber's superior. (*Id.* at 104). After about two months of observation, O'Hara began to design the "ONE HOS" or merged operations organization. (Doc. 65-2, pp. 47-48). Owens

was assigned to the team designing the new consolidation center. (Doc. 65-1, p. 156).

Even shortly after O'Hara started working at AWR, Owens felt her style was unprofessional. (*Id*. at 138). Owens also felt that her authority was not respected. (*Id*. at pp.184-187). Because of ongoing difficulties between O'Hara and Owens, Human Resources Business Partner, Monica Poindexter, facilitated an off-site meeting between the two in March 2020. Doc. 65-5, pp. 14, 133-34). While Poindexter and O'Hara viewed the meeting as productive and helpful, Owens was left feeling as though the meeting was retaliatory. (Doc. 65-1, p. 270; Doc. 65-2, p. 112; Doc. 65-5, p. 151).

Starting in 2019, Owens raised a variety of race and gender-based discrimination complaints in relation to inclusiveness and pay equity. (Doc. 1, p. 4). These included a request for a pay equity check in 2019 (Doc. 65-1, pp. 208-09), a meeting with O'Hara in September 2019 where Owens expressed concerns that she was not being appropriately included in critical decision making, a meeting with President Palm and the HR director in October 2019 (*Id*. at pp. 203-07), an informal written complaint in October 2019 (Doc. 65-9), email communications with HR requesting responses and resolutions for her grievances, and a formal Ethics Complaint in February 2020 (Doc. 65-10). (Doc. 1). Notable results of these complaints include a pay equity check that revealed Owens was compensated at a rate 7% higher than her peers (Doc. 65-8) and an investigation stemming from her February 2020 complaint that failed to turn up evidence of any wrongdoing. (Doc. 65-1, p. 264; Doc. 1).

In July 2020, Owens applied for the new Contact Center Director position that resulted from the merger. (Doc. 1) This position was a consolidation of the positions at Alton and Naperville. (Doc. 65-1, pp. 310-11). Other positions also were posted at this time. (*Id*. at pp. 300-01). Owens was interviewed for the position by a panel chosen by O'Hara and

consisting of O'Hara, Poindexter, Steve Lauer, and Matt Lindner. (Doc. 65-5, pp. 186, 194). It is undisputed that the goal was to ask all candidates the same questions. (Doc. 65-2, p. 126). Following the interviews, candidate Benavidez was chosen for the position because of his ability to demonstrate concrete steps and strategies that he would implement at the call center, as well as his experience managing a selling-focused call center. (Doc. 65-3). On August 28, 2020, Owens learned that she had not been selected for the Call Center Director position. (Doc. 1). She was encouraged to apply for other opportunities. (Doc. 65-1, p. 316). It is undisputed that Owens did not apply for any other roles. (*Id.* at 317, Doc. 65-2, p. 136). Owens remained in her position with AWR until October 16, 2020. (Doc. 1).

On March 2, 2021, Owens filed a Charge of Discrimination with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC) alleging American Water discriminated against her on the basis of race and sex and then retaliated against her (Doc. 65-12). Owens received a Notice of Right to Sue from the EEOC on August 2, 2021. (Doc. 1, p. 2).

On October 29, 2021, Owens timely filed this action within 90 days of receipt of the Notice of Right to Sue (*Id.*). Owens is proceeding on the following claims:

**Count I:**     Race and Gender Discrimination in violation of Title VII;

**Count II:**    Race and Gender Discrimination in violation of the Illinois Human Rights Act ("IHRA");

**Count III:**   Race Discrimination under Section 1981 of the Civil Rights Act of 1866;

**Count IV:**    Retaliation in violation of Title VII;

**Count V:**     Retaliation in violation of the IHRA;

**Count VI:**     Retaliation under Section 1981 of the Civil Rights Act of 1866; and

**Count VII:**     Violation of the Equal Pay Act.[2]

## LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Id.* (citation omitted).

---

[2] This Court has subject matter jurisdiction over Owens' Title VII, Section 1981 of the Civil Rights Act of 1866, and Equal Pay Act claims pursuant to 28 U.S.C. § 1331. The remaining state law claims are before this Court by way of supplemental jurisdiction under 28 U.S.C. § 1367.

DISCUSSION

## I.      Owens' Supplemental Declaration (Doc. 86).

Owens relies heavily on her Declaration in response to AWR's Motion for Summary Judgment. AWR first argues "Owens' Declaration fails to establish that she has the requisite personal knowledge or is competent to testify to certain assertions." (Doc. 90, p. 2). "Second, Owens repeatedly offers inadmissible legal conclusions, argument and speculation." (*Id.* at p. 3). Finally, "Owens tries to improperly contradict her deposition testimony." (*Id.*).

The Court agrees. Owens cannot "thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict [her] prior depositions." *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). For these reasons, Owens' Declaration must be excluded for purposes of this summary judgment motion.[3]

## II.     Time Barred Allegations & Hostile Work Environment Claim

AWR argues that "[m]any of the alleged adverse actions Owens attaches to her claims are time barred because they occurred prior to May 6, 2020, more than 300 days prior to when she filed her Charge of Discrimination on March 2, 2021." (Doc. 64, p. 18). Specifically, AWR asserts that the following actions should not be considered:

- Her HR support was allegedly removed in July 2019. (*See* ECF No. 1, ¶18).

- She was required to attend a March 4, 2020, meeting with her manager and HR. (Ex. 1, pp. 270:11-272:20).

- Her work was being micromanaged and she was excluded from work communications per Owens' February 2020 ethics complaint. (*See* ECF No. 1, ¶21; Ex. 1, pp. 244:19-251:12; 252; 20-259:24; Ex. 9; Ex. 10).

---

[3] The Seventh Circuit has "urge[d] district courts to carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004). Even if the Court considered the statements within Owens' declaration, those statements would not change the result.

(*Id*.).

Owens responds that her claims are not time-barred under the continuing violation doctrine because she alleges a hostile work environment claim. (Doc. 85, p. 2). In fact, Owens relies heavily on an alleged hostile work environment claim to establish discriminatory and retaliatory adverse actions throughout her response. (*Id*.). However, Owens never pled a hostile work environment claim. "To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on her [race] or [gender] (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015) (citing *Cooper–Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004)). Owens' allegations of harassment by AWR employees fail to include facts from which the inference that the harassment was based on Owens' gender or race can be drawn. Nor does the complaint state that she believed her treatment was linked to her gender or race. Rather, Owens pleads the following:

> 17. Beginning in February 2019, plaintiff raised the deplorable lack of inclusiveness, unfair and unequal treatment, and racial and gender pay equity with AWR upper management, Human Resources and Corporate Compliance. These included:
>
> > a. In February 2019, a pay equity check was discussed face-to-face with then HR Director Deb Quigley and VP of Operations Doug Brand. Neither provided a response.
> >
> > b. A face-to-face meeting in Naperville on September 24, 2019 with O'Hara, expressed concerns that she had not been included in critical decisions as befitted the director and the adverse effects this had on Alton operations, customers and employees.

      c.  A face-to-face meeting with President Eric Palm and then Human Resource Director, Marshelle Hightower, on October 1, 2019.

      d.  An informal written complaint dated October 6, 2019; and

      e.  Email communication with the Director of Human Resources seeking a response and resolution. AWR did nothing to address her concerns.

18. By July 2019, plaintiff was already experiencing retaliation from raising these complaints, including by the removal of her local Human Resources support.

19. In February 2020, plaintiff filed a formal Ethics Complaint about AWR's lack of racial inclusiveness. O'Hara was a focus of plaintiff's complaint.
. . .

21. Following the filing of her Complaint, plaintiff was retaliated against in numerous ways that adversely impacted her ability to perform her job, including that she was further excluded from communications that directly impacted her job, important staff were moved to Naperville, leaders under plaintiff began getting direction directly from O'Hara, and O'Hara began micro-managing plaintiff's emails and other communications.

. . .

28. Plaintiff was subjected to a work environment that was pervasively hostile to African-Americans, especially African-American women.

(Doc. 1).

Even if Owens pleaded a hostile work environment claim, she has failed to provide the evidence necessary to establish the claim's elements. To determine whether the harassment was "sufficiently severe or pervasive to be actionable, [the Seventh Circuit] look[s] at the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was

directed at the victim." *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 601 (7th Cir. 2014) (citing *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013)). There is no evidence that the alleged harassment was physically threatening or humiliating. Additionally, there is no evidence that the alleged harassment interfered with Owens' work performance. *See* Doc. 65-1, pp. 46-47 ("You could not challenge me on my performance. You saw the reviews. You can't challenge me on my professionalism.").

Accordingly, Owens' claims of discrimination and retaliation based on AWR's alleged hostile work environment must be dismissed. And any alleged adverse actions that occurred before May 6, 2020, are time-barred where used to support Owens' claims under Title VII and the IHRA.[4] *See Riley v. Elkhart Community Schools*, 829 F.3d 886, 890 (7th Cir. 2016) (stating that the statute of limitations for claims brought under Title VII is 300 days).

### III.   Counts I, II, & III – Race and Gender Discrimination in violation of Title VII, IHRA, and Section 1981[5]

To establish a prima facie case of employment discrimination, Owens must demonstrate that she (1) is a member of a protected class, (2) was meeting her employer's legitimate expectations, (3) suffered an adverse employment action; and (4) that similarly situated employees, who were not members of the protected class, were treated more favorably. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002).

---

[4] The statute of limitations for claims brought under Section 1981 is four years. *Riley,* 829 F.3d at 891. Thus, in so far as any of the alleged adverse actions relate to Owens' claims of racial discrimination and retaliation under Section 1981, they are only time-barred if they occurred prior to October 29, 2017.

[5] The Title VII, Section 1981, and IHRA claims need not be analyzed separately because Title VII, Section 1981 and IHRA claims are all analyzed under the same evidentiary rubrics. *See Hoosier v. Greenwood Hosp. Mgt. LLC*, 32 F. Supp. 3d 966, 975 (N.D. Ill. 2014) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 401 (7th Cir. 2007); *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill.2d 172 (Ill. 1989)). Thus, failure to establish a prima facie case of discrimination under Title VII for an employment action "necessarily forecloses Section 1981 and IHRA claims arising from the same conduct." *Id.*

A.  *Discriminatory Compensation*

Owens alleges that she experienced race and gender-based discrimination when AWR compensated her at a lower rate than that of her comparable white, male peers. (Doc. 1, pp. 6-8). While discriminatory pay would qualify as an adverse action, Owens has still not brought a prima facie discrimination claim based on discriminatory compensation. AWR argues that Owens has not compared her salary to individuals who are similarly situated to her. "A similarly situated employee is one who is 'directly comparable to [the plaintiff] in all material respects.' In evaluating whether two employees are directly comparable, the Court must look at all relevant factors, including whether the employees '(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (internal citations omitted).

Owens presents Matthew Lindner, Michael Champion, Preston Pallas, and Adam Boelke as male employees of AWR who were allegedly compensated at a higher rate for the same work. (Doc. 85, pp. 3-5). According to Owens' own testimony, however, each of the men Owens compared her salary to had different roles and longer tenures within the company. Lindner was the "Director of Marketing" and had worked at AWR for longer than Owens. (Doc. 64, p. 11) His job responsibilities involved running direct marketing and digital campaigns as well as company brand projects and managing employees in Camden, New Jersey, and Naperville, Illinois. (*Id.*) Similarly, Michael Champion was the Director of Business Development and then the Director of Client Success. (*Id.*) He had also worked at AWR for longer than Owens. (*Id.*) He worked on special projects and supported leaders with

business development projects. He was not, however, a part of operations reorganization like Owens. (*Id.* at 12). Preston Pallas was the Senior Director of Call Center Operations. (*Id.*) Owens herself admitted that he supervised the regulated[6] side of the Alton and Pensacola Call Centers, which, as Owens herself testified, experience higher call volumes. Owens' predecessor, Adam Boelke, had the title of both Vice President of Operations and Call Center Director. (*Id.*) His tenure with AWR was also longer than that of Owens. (*Id.*) Furthermore, the fact that AWR employs a pay scale determined by a variety of factors, including one's position, tenure within AWR, and performance is not disputed, nor is the fact that bonus awards are determined within a range associated with the employee's salary grade. (*Id.* at 13).

Owens argues that she performed the same job as these men and received a lower salary. She relies upon the fact that "at times" they reported to the same supervisor and that when looking at her time working for American Water entities generally, she had more experience. But Owens' own testimony establishes that these men all held a position that Owens did not, despite being at the same or a lower pay grade classification. Most of them also had worked at AWR for longer than Owens had at the time salaries were being compared. Thus, weighing all the relevant factors, the Court finds that they were not similarly situated, and a claim of discriminatory pay fails.

   B.  *Discriminatory Failure to Investigate*

The Court notes that each incident Owens uses to support her failure to investigate argument cannot be considered for purposes of the Title VII and IHRA claims because they

---

[6] Regulated call centers focus on water services rather than home warranties.

are time-barred. Further, in so far as they can be considered in relation to Owens' claim under Section 1981, Owens still does not have a viable claim for discriminatory failure to investigate. As discussed above, to establish a prima facie discrimination claim, Owens must show that a similarly situated employee was treated more favorably. Owens does not point to any evidence showing that a white or male co-worker filed a complaint that was investigated differently by AWR.

Further, even if she had presented such evidence, failure to investigate does not qualify as an adverse action in this case. "[A]n adverse employment action is one that affects the compensation, terms, conditions, or privileges of employment, such as hiring, firing, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Gibbs v. Gen. Motors Corp.*, 104 F. App'x 580, 583 (7th Cir. 2004) (internal quotation and citation omitted). Owens provides no evidence that anything about her employment was changed as a result of AWR's alleged failure to investigate. If anything, Owens' argument establishes that she is upset because nothing did change. Therefore, she has not established a materially adverse action based on a failure to investigate. *See Kuhn v. United Airlines*, 63 F. Supp. 3d 796, 802-04 (N.D. Ill. 2014) (holding that an alleged failure to investigate is not an adverse material action because nothing about the employee's situation was changed by the failure to investigate).

C. *Discriminatory Failure to Hire and Discharge*

Once a plaintiff has successfully alleged a prima facie discrimination claim, the burden shifts to the defendant. *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 322 (7th Cir. 2001). Once the burden shifts, AWR must provide evidence of a "legitimate and non-discriminatory reason" for the adverse action. *Id.* (internal citations omitted). If AWR provides a legitimate

and non-discriminatory rationale, the claim must be dismissed unless Owens can prove that the argued reason was merely pretext to hide discrimination. *Id.* To prove that the reason was pretextual, Owens must establish by a preponderance of the evidence that the non-discriminatory reasoning was a lie. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983-84 (7th Cir. 1999). This can be done with both direct and indirect evidence. *Id.*

Owens alleges that AWR's failure to hire her for the Director of Contact Center Operations—and its additional failure to find a different job for her after the merger—was unlawfully discriminatory. AWR argues that both the discriminatory failure to hire and discriminatory discharge claims should be dismissed because AWR has successfully provided evidence that these decisions were made because of lawful, non-discriminatory reasons.

Simply put, the Court finds that AWR has successfully provided evidence of a non-discriminatory reason behind AWR's decision to not hire Owens for the Contact Center Director position and Owens' eventual discharge from AWR. AWR has provided ample rationale to support its decision to hire Benavidez rather than Owens for the Contact Center Director position. The record clearly reflects that AWR was actively working to merge its two call centers. AWR also identifies Benavidez's specific interview answers, his ability to lead, and his extensive experience managing a call center that was more sales-oriented than the one Owens had been managing as specific reasons Benavidez was hired for the position. (Doc. 84, p. 18). Further, Owens was not hired for an alternative position because she did not apply for anything other than the Contact Center Director position. (Doc. 65-1, p. 317).

In an effort to try and prove that these non-discriminatory reasons were mere pretext, Owens points to a variety of facts to establish that AWR's reasoning is false. To support her

argument,[7] Owens states that her job included a wider range of job responsibilities, that she was told to look for a job, that interviews didn't have to take place to fill the role, and the fact that O'Hara was late to the interview. The Court finds that none of these arguments proves the non-discriminatory rationale provided by AWR was pretextual. Owens also focuses on the dispute surrounding whether she said, "I don't know," as an answer to a question. But this dispute alone does not prove that the rationale provided was pretext. Even if Owens did not say, "I don't know," it would have no bearing on whether AWR was being truthful when it stated that Benavidez was selected because he was a better fit for the position.

Similarly, even if there were no additional positions available for Owens to apply for, she provides no evidence that she was discharged for any reason other than the fact her current position was being eliminated because of the merger and she was not the candidate chosen for the Contact Center Director position. Despite Owens' arguments to the contrary, AWR was not required to create or find a position for her, even if it was able to do so for others. Thus, because no reasonable fact finder could determine that Owens has provided evidence establishing that AWR's non-discriminatory rationale was pretext, any discrimination claim arising from an alleged failure to hire or discharge must be dismissed.

### IV.    Counts IV, V, VI – Retaliation under Title VII, IHRA, and Section 1981[8]

The elements necessary for a retaliation claim are similar to those already discussed in relation to Owens' discrimination claims. "To prove retaliation under Title VII, a plaintiff must show: (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and

---

[7] The Court reiterates that any arguments relying upon evidence found in Owens' Declaration (Doc. 86) will not be considered.

[8] *See* fn. 3.

the adverse action." *Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1118 (7th Cir. 2022) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996)). Just as in a discrimination claim, if Owens successfully alleges a prima facie retaliation claim, the burden shifts, allowing AWF an opportunity to prove that any adverse action was the result of a non-discriminatory reason. *See Johnson v. West*, 218 F.3d 725, 732 (7th Cir. 2000).

It is undisputed that Owens engaged in protected behavior when she made complaints about race and gender-based discrimination. AWR argues, however, that Owens has failed to establish both an adverse action and a causal connection. Owens argues that she has established the following adverse actions: (1) a hostile work environment, (2) failure to hire, (3) discharge from her current position, and (4) a refusal to pay out her APP bonus.

As already discussed above, the Court finds that Owens' alleged hostile work environment claim must be dismissed. The factual support is time-barred under Title VII, and any claim under Section 1981 has not been properly made before this Court.

As for the alleged refusal to pay Owens' APP bonus, even the evidence provided by Owens herself does not indicate that she was guaranteed a payment of the APP bonus. The severance agreement specifically indicates that the APP bonus was not a part of the severance agreement. (Doc 85-5, p. 1). And, while the retention agreement said she maintained the right to receive the APP bonus, that only applied if she was still an active employee on March 15, 2021. (*Id.* at 3). Because Owens did not lose something she was entitled to have as a part of her employment, the bonus payment cannot constitute an adverse action. *See Hunt v. City of Markham, Ill.*, 219 F.3d 649, 654 (7th Cir. 2000) (explaining that withholding a bonus is not an adverse action because they are sporadic, irregular, unpredictable, and discretionary). Further, even if withholding the bonus was an adverse action, the record provides evidence

that it was withheld for a non-discriminatory reason that Owens has not proven to be pretextual. The retention agreement specifically states that an employee must be actively employed on March 15, 2021, to receive the bonus, and it is undisputed that Owens was not employed by AWR at that time. (Doc. 85-4, p. 9). Thus, because withholding the bonus was not an adverse action, and because the record indicates that a non-discriminatory reason exists, no reasonable fact finder could conclude that the bonus was withheld in retaliation.

Finally, any retaliation claim that relies upon AWR's failure to hire Owens must be dismissed because even if Owens has stated a prima facie retaliatory failure to hire claim, AWR has sufficiently established a legitimate, non-discriminatory rationale behind its decision not to hire Owens for the Contact Center Director position or any other position. As discussed above, AWR did not choose Owens because the other candidate for the Contact Center Director position was more qualified and better suited to the position based on the factors AWR was evaluating. Owens argues that she had experience and skills that were transferable to the position, but this does not mean she was entitled to the position. Further, Owens' personal belief that she was the best candidate does not translate into evidence that AWR's non-retaliatory reason for hiring the other candidate was pretextual. Owens also argues that there were no other positions for which she could apply. Even assuming this is true, it is still undisputed that Owens did not submit any other applications. This is a non-retaliatory rationale for her discharge. Thus, because AWR has a non-retaliatory rationale for Owens' discharge, and because no fact finder could find that Owens has proven this rationale to be pretextual by a preponderance of the evidence, any retaliation claim related to AWR's failure to hire Owens must be dismissed.

## V.        Count VII – Violation of the Equal Pay Act

Owens filed a Motion for Partial Summary Judgment as to Count VII, arguing that there is no dispute as to the material facts that establish a violation of the Equal Pay Act. (Doc. 52). AWR then filed a counter motion for Summary Judgment as to Count VII, arguing that Owens failed to establish an Equal Pay Act Violation. (Doc. 63).

To state a prima facie claim of discrimination under the Equal Pay Act, Owens must show that "(1) higher wages were paid to a male employee, (2) for equal work requiring substantial similar skill, effort, and responsibilities, and (3) that the work was performed under similar working conditions." *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016) (quoting *Warren v. Solo Cup Co.*, 515 F.3d 627, 629 (7th Cir. 2008)). To determine if the work that Owens did was equal to that performed by Boelke, the court must look at the "common core of tasks" *Jaburek*, 813 F.3d at 632 (quoting *Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2010)). This inquiry requires an examination of what the assigned duties were, when the respective parties started work, where they worked, and their backgrounds. *Id.* (citation omitted). If Owens successfully establishes all three, the Equal Pay Act provides AWR with four affirmative defenses. If AWR can show that the alleged pay differential is due to "(i) a seniority system; (ii) a merit system; (iii) a system measuring earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex," there has not been a violation of the Equal Pay Act. 29 U.S.C. § 206(d)(1).

Owens alleges that her predecessor, Adam Boelke, received higher wages for the performance of the same job, in the same location, under the same title.[9] (Doc. 53, p. 4). She

---

[9] "Under the Equal Pay Act, a claim for sex-based wage discrimination must be brought within two years of the alleged violation, or withing three years if willfulness is alleged." *Mirza v. Dep't of Treasury*, 875 F. Supp. 513, 522 (N.D. Ill. 1995) (citing 29 U.S.C. § 255(a). Owens filed her complaint, alleging a willful violation of the Equal Pay

points to the base salaries she and Boelke earned throughout their time working for AWR to support this claim. (*Id.* at p. 3) AWR argues that Owens is comparing only the base salary amounts, rather than the total compensation earned by each individual. (Doc. 68, pp. 5-7). AWR also argues that even if Boelke was paid more than Owens, Owens cannot successfully bring an Equal Pay Act claim because the common core of tasks and working conditions were not sufficiently similar (*Id.* at pp. 7-10). The Court need not perform that analysis, however, because Owens' claim fails to establish that Boelke was paid higher wages.

Owens argues that she was making a lower base salary for the entire four years she held the Director of Call Center Operations position than Boelke was in 2016. (Doc. 53, p. 3). In her motion for summary judgment, Owens focuses on comparing her base salary in 2020, after four years of work in the Director position, to Boelke's base salary in 2016, after eight years of work in the Director position. (*Id.*) But under the Equal Pay Act, one must compare total compensation amounts, rather than base salaries. *See* 29 C.F.R. § 1620.10 (stating that "wages". . . includes all forms of compensation . . . whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name."). Boelke's total compensation after his last full year with the company was $213,216.62 (Doc. 72, p. 2) and, by Owens' own admission, her total compensation during her last full year with the company was $220,272.43, even though she had only been in the position for four years. (Doc. 60-1, p. 5). Further, in 2020, Owens reported total wages of $265,252.47 (Doc. 73), and a

---

Act, on October 29, 2021. (Doc. 1). AWR argues that the two-year limitation should apply because there is insufficient evidence of willfulness, but the complaint does allege a willful violation. (Docs. 68, p. 7; 1, pp. 10-11). Thus, the Court can only consider the actions Owens alleges violated the Equal Pay Act occurring after October 29, 2018.

pay equity check revealed that Owens' total compensation was approximately 7% higher than the average Director of Operations working for American Water. (Doc. 69-5, p. 3) Thus, a review of the reported total compensation for Owens and Boelke does not establish that Boelke received higher compensation as required under the Equal Pay Act.

Additionally, even if Owens had successfully established that she was receiving less compensation than Boelke, her own testimony provides support for the fact that she received a different base salary due to factors other than sex. The Equal Pay Act provides four affirmative defenses including a catch-all defense for a pay scale based on a "factor other than sex." 29 U.S.C. § 206(d)(1). The qualifying types of factors for this defense are limitless so long as they are bona fide. *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989).

As discussed above, AWR argues that they utilize a seniority/merit-based compensation system. (Doc. 68, p. 12, Doc. 69-1). The record indicates that AWR assigns jobs to a salary grade that provides a salary range, with an employee's specific salary being determined by an analysis of multiple factors such as tenure specifically with AWR and performance reviews. (Doc. 69-1, p. 5). A system of this type combines two of the affirmative defenses specifically identified by the Equal Pay Act—a merit-based system and a seniority-based system. Owens argues that AWR cannot plausibly assert this affirmative defense because even within this system she should receive a higher salary because she had worked for American Water *entities* longer than Boelke. (Doc. 53, pp. 4-5). But AWR does not indicate that its system focuses on general experience. It argues that salary determinations are based on experience specifically with AWR. (Doc. 68, p. 12) According to Owens' own testimony,

she did not start working with AWR until December 2016. (Doc. 69-2, p. 49-51.)[10] Thus, she never reached the same level of experience with AWR that Boelke had when he was terminated in 2016. Further, Owens also testifies that Boelke had a higher-level title, Vice President of Operations, and had worked with AWR specifically for seven or eight years. (Doc. 69-2, pp. 335, 340). These two facts alone—that Boelke had a second, higher title and that he had work experience with AWR specifically that was greater than Owens'—provide legitimate factors other than sex that would justify a difference in base salary.

Finally, Owens does not dispute the existence of a graded pay scale that relies on merit and seniority. In fact, because she did not dispute this in her response to AWR's Motion for Summary Judgment (Doc. 85), the existence of such a system is considered undisputed. Owens only argues that she had a longer career in this general field and for American Water entities but, as is also undisputed, tenure with AWR is a primary consideration when determining salary. (Doc. 64 at p. 12). It is also undisputed that Boelke had a longer tenure within AWR.

Because Owens has failed to establish a prima facie violation of the Equal Pay Act and because AWR has successfully asserted an affirmative defense under the Equal Pay Act, AWR is entitled to summary judgment on this count.

---

[10] Owens argues that she has 30 years of experience with American Water entities, but this experience was not specifically with AWR—an American Water entity that focuses specifically on the home warranty experience. Owens' own testimony establishes that AWR was a new company formed through American Water's acquisition of a home warranty company. (Doc. 69-2, pp. 42, 101-104). Owens' prior experience with American Water entities focused on the water utility business. (Id. at pp. 24-36). Thus, her previous experience, while in the same field, was not identical to that of her new position, in a new subsidiary, focused on a different aspect of the business.

CONCLUSION

For these reasons, the Court **DENIES** Owens' Motion for Partial Summary Judgment

(Doc. 52) and **GRANTS** AWR's Motion for Summary Judgment (Doc. 63). The Clerk of Court

is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:  September 29, 2023**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**